IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RONALD REEVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:13-cv-69-WHA |
| | ) | (WO) |
| ARMY FLEET SUPPORT, LLC; L-3 | ) | |
| COMMUNICATIONS; DON DONLEY; | ) | |
| PENNY WESTRICK; UNITED STATES OF | ) | |
| AMERICA; and INTERNATIONAL | ) | |
| ASSOCIATION OF MACHINISTS AND | ) | |
| AEROSPACE WORKERS, AFL-CIO, | ) | |
| LOCAL LODGE NO. 2003, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This case is before the court on five Motions to Dismiss for Failure to State a Claim filed

by Defendants Army Fleet Support, LLC ("AFS") (Doc. #9), L-3 Communications ("L-3") (Doc.

#11), Don Donley ("Donley") (Doc. #13), Penny Westrick ("Westrick") (Doc. #15),[1] and

International Association of Machinists and Aerospace Workers, AFL-CIO, Local Lodge No.

2003 ("IAM") (Doc. #19) (collectively, "the Defendants").[2]

_____

[1] These four Defendants also filed a Supplement to Motions to Dismiss (Doc. #24), which is under submission.

[2] The United States Attorney filed a Notice of Substitution (Doc. #46) that the United States was substituted for an original Defendant, William Tol Singer, a federal employee, as a party in this action.  The United States filed a Motion to Dismiss (Doc. #47), and the court ordered Reeves to respond by May 7, 2013 and the United States to reply by May 14, 2013 (Doc. #48).  For purposes of this Order, the United States is not included in discussion regarding the Defendants.

The Plaintiff, Ronald Reeves ("Reeves"), filed a Complaint (Doc. #1) in this court on January 31, 2013 against the Defendants.  The Complaint alleges various claims: breach of contract, constructive discharge, wrongful termination, conspiracy, and breach of duty of fair representation.  Reeves's ground for jurisdiction in this court is federal question jurisdiction under § 301 of the Labor Management Relations Act ("LMRA").  The Defendants move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6), claiming failure to state a claim, that Reeves's claims are preempted by § 301 of the LMRA, and that Reeves's suit is barred by the applicable statute of limitations.

For reasons to be discussed, the Motions to Dismiss are due to be GRANTED.

## II. <u>MOTION TO DISMISS STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted.  In analyzing a motion to dismiss, the court accepts the plaintiff's factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  To survive a motion to dismiss, a

complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570.   The factual allegations  "must be enough to raise a right to relief above the speculative level." *Id*. at 555.

### III.  <u>FACTS</u>

The factual allegations of the Plaintiff's Complaint are as follows:

Reeves worked at AFS for approximately seven years and, prior to that, was employed by other U.S. Army contractors for over thirty-six years.  On or about June 6, 2010, several complaints were made against Reeves accusing him of sexual harassment in the workplace.  A few days later, Reeves contacted IAM to seek union representation in the sexual harassment accusations.  Reeves met with Mike Cooke of IAM, who told Reeves, "I know who you are; you are the hourly employee that thinks he's management."  According to Reeves, Cooke then opened a drawer, revealing a firearm he kept in his office.

On or about June 14, 2010, Reeves and his IAM representative Josh Allgood attended a meeting with Penny Westrick, a representative from AFS's human resources department.  At one point during the meeting, Allgood left the room to speak in private with Westrick, and Reeves states that after this private conference, Allgood's attitude toward Reeves and his defense of the accusations against Reeves changed for the worse.  Reeves had to give up his AFS badge when the meeting concluded and was told AFS would be in contact with him.  At some point, Fred Duff, a human resources employee of AFS, told Reeves that he needed to resign or his family would be embarrassed and humiliated.  On June 28, 2010, under pressure to resign, Reeves signed a notice of retirement from his position at AFS.

Reeves discovered on July 23, 2012, during depositions in a separate lawsuit concerning the sexual harassment complaints against him, that William Tol Singer, the ACLC Deputy Director, United States Army, went to talk to Don Donley, the Ethics Officer for AFS, along with one of the alleged victims of harassment and her husband, Jeffery Barnett.  At this meeting Singer spoke to Donley regarding Reeves, saying, "These are the facts as we know it; the ball is in your court. Deal with it."  In a deposition in August 2012 of Vincent Guarino—who investigated the allegations of sexual harassment against Reeves—Reeves learned that Guarino was told by Donley to mark the harassment charges as substantiated even though Guarino did not believe they were.  Reeves also discovered in August 2012 that Allgood, his union representative, was having an affair with Westrick at the time Reeves was under investigation. Reeves received this information from Allgood's ex-wife, Kelly Smith.

## IV. DISCUSSION

### A. Defendant L-3 Communications

Defendant L-3 moves to dismiss on the basis that the Complaint fails to allege any wrongdoing against it.  The court agrees.  Although L-3 is listed in the caption of the Complaint and identified as a Defendant, without alleging who or what it is, the Complaint is otherwise totally bare of any other mention of L-3.  Merely demanding judgment against "the Defendant(s)" is not sufficient to state a claim against a party which is not alleged to have committed any act, or wrongdoing, as was alleged against all other named Defendants. Defendant L-3's motion is due to be GRANTED.

### B. The Claims

### 1. Counts I, II, and III

The first three counts in the Complaint allege claims only against AFS, referring to it as "The Company."

Count I alleges that the collective bargaining agreement with the union required investigation and finding of wrongdoing by Reeves to terminate his employment, and that The Company breached that contract by conducting a "sham investigation" in which The Company told the investigator to find wrongdoing even though he did not find the requisite evidence to say that the claims of sexual harassment were substantiated.

Count II alleges constructive discharge by The Company, based on Reeves being told by a management employee that he needed to resign, or else Reeves would bring humiliation and embarrassment on his family.  He alleges that he was told this because of the sham investigation, and his resignation therefore amounted to a constructive discharge.

Count III alleges wrongful termination by The Company because his resignation resulted from the sham investigation and constituted constructive discharge.

## 2.  Count IV

Count IV alleges a conspiracy by all Defendants to wrongfully terminate the Plaintiff, based on the sham investigation and on the failure of his union representative, Allgood, to properly represent him at the termination meeting.  Allgood's failure is based on allegations that his attitude toward Reeves and his defense of the accusations changed after Allgood stepped out and spoke privately with The Company's Human Resources Representative, with whom Allgood was having an affair.

**3.  Count V**

Count V alleges a claim against IAM for breach of duty of fair representation at the termination meeting.

## C.  <u>Matters Not In Issue</u>

**1.  Section 301 Preemption**

The Defendants argue that the state law claims against them are preempted and governed by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  The Plaintiff agrees. Therefore, the claims will be analyzed as hybrid § 301 claims.

**2.  Applicable Statute of Limitations**

While the Defendants other than IAM refer in their motions to longer limitation periods under state law, the Plaintiff rightly concedes that, since those claims are governed by § 301 of the LMRA, the applicable statute of limitations for them, as well as the claims against IAM, is the shorter period of six months provided in §10(b) of the National Labor Relations Act, 29 U.S.C. § 160(b).  Therefore, the court will apply this six-month limitation period to all claims.

## D.  <u>The Statute of Limitations Defense</u>

While the Plaintiff agrees that the applicable statute of limitations is six months, where he differs with the Defendants is when the six-month period began to run.  The parties agree that "the general rule is that § 10(b)'s six-month limitation period starts running when the plaintiff was or should have been aware of the acts constituting the alleged violation." *Proudfoot v. Seafarer's Int'l Union*, 779 F.2d 1558, 1559 (11th Cir. 1986).  The period is measured from the

date on which the employee knew or should have known of the union's final action or the employer's final action giving rise to the claim. *Id.*   In addition, "[f]or the purpose of determining when the § 10(b) period begins to run, we look to when [Reeves] either [was] or should have been aware of the injury itself, not to when [Reeves] became aware of one of the injury's many manifestations." *Benson v. Gen. Motors Corp.*, 716 F.2d 862, 864 (11th Cir. 1983).

   As to IAM, Reeves knew at the termination hearing on June 14, 2010, according to his allegations in the Complaint, that his union representative's attitude toward him and his defense of the accusations against him changed for the worse after his representative had a private conversation with The Company's human resources representative, and The Company confiscated his work badge and sent him home at the end of the meeting.  Then, on June 28, 2010, Reeves signed a notice of retirement, allegedly under pressure from The Company. Therefore, the "final action" of the union took place on June 14, 2010, and the injury which he claims was caused by IAM's failure of fair representation and conspiracy was his alleged constructive discharge on June 28, 2010.  He filed his Complaint on January 31, 2013, two and a half years later.

   Reeves, however, contends that he was not aware and should not have been aware of "the acts constituting the alleged violation" by IAM until he was told in August, 2012, by his union representative's ex-wife that at the time of the termination meeting his representative there was having an affair with The Company's human resources representative, Westrick, who had the alleged private conversation with him, and that the six-month limitation did not begin to run until then.

7

As to the other Defendants, their "final action" giving rise to the claims against them was the alleged pressuring of his resignation on June 28, 2010, and that pressured resignation was his injury.  Reeves argues, however, that he did not learn of the investigation being a sham, and therefore a breach of the collective bargaining agreement, until much later.  This was in July and August, 2012, when depositions in the separate lawsuit concerning the sexual harassment complaints against him disclosed the meeting by the Army's ACLC Deputy Director, along with one of the alleged victims and her husband, with The Company's Ethics Office, in advance of the termination meeting.  One deposition also disclosed that the investigator for The Company was told by the Ethics Officer to mark that the complaints were substantiated, even though, according to the Complaint, the investigator did not believe that they were.  Since this action was filed within six months from then, Reeves contends that it was timely-filed.

Obviously, whatever the nature of The Company's investigation was, Reeves knew whether or not he had been guilty of sexual harassment.  And, regardless of the nature of his representation by his union representative, he was not discharged by The Company.  Reeves was allowed to resign and did so in order to avoid his family being embarrassed and humiliated, albeit under pressure from a human resources employee to do so, according to his Complaint.  If he felt that his resignation had been wrongfully pressured because he was being wrongly accused of sexual harassment in the work place and that his union representation at the hearing had been arbitrary, discriminatory, or in bad faith[3], he had six months to file suit.  None of this alleged "new information" discovered over two years later made him first aware of the final actions or of

---

[3] The elements required to support a breach of duty of fair representation claim.  *Vaca v. Sipes*, 386 U.S. 171, 177 (1967).

his injury allegedly resulting from them.  Reeves's claims are barred by the six-month limitation period.

### E.  Other Grounds

In light of the fact that this suit is barred by the statute of limitations, the court will not discuss the adequacy of the allegations in the various counts to state a claim.

### CONCLUSION

For the foregoing reasons, it is hereby ORDERED as follows:

The Motions to Dismiss (Docs. #9, 11, 13, 15 and 19) and Supplement to Motions to Dismiss (Doc. #24) under consideration are GRANTED, and this case is DISMISSED with prejudice as to Army Fleet Support, LLC, L-3 Communications, Don Donley and Penny Westrick.

DONE this 3rd day of May, 2013.


/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE